UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UPMANN SANCHEZ TURF AND LANDSCAPE dba US TURF,<br><br>Plaintiff(s),<br><br>v.<br><br>US TURF LLC,<br><br>Defendant(s). | Case No. 2:21-CV-1749 JCM (DJA)<br><br>ORDER |

Presently before the court is defendant and counterclaimant US Turf, LLC's motion for summary judgment. (ECF No. 39). Also before the court is plaintiff and counter-defendant Upmann Sanchez Turf and Landscape, Inc.'s motion to exclude defendant's expert testimony. (ECF No. 41). Both motions are fully briefed. Plaintiff filed a motion for summary judgment (ECF No. 40), which has also been fully briefed.

For the reasons stated below, the court GRANTS in part and DENIES in part plaintiff's motion to exclude (ECF No. 41); DENIES plaintiff's motion for summary judgment (ECF No. 41); and GRANTS in part defendant's motion for summary judgment (ECF No. 39).

**I.      Procedural Background**

This trademark infringement action arises from the parties' use of similar names for their respective artificial turf-laying businesses. Plaintiff currently holds two trademarks—a standard character word mark and a design mark. (ECF No. 1, at 3). Plaintiff filed three Lanham Act claims against defendant for both marks; trademark infringement, unfair competition, and injunctive relief.

**James C. Mahan**
**U.S. District Judge**

Defendant has counterclaimed for (1) declaratory relief for non-infringement based on innocent local use; (2) cancellation of plaintiff's registered word mark based on priority of use; (3) declaratory relief for non-infringement based on merely descriptive word mark; (4) cancellation of plaintiff's registered word mark based on being merely descriptive; (5) damages caused by plaintiff's registered word mark, which was obtained by fraud; and (6) cancellation of plaintiff's registered word mark, also based on fraud. (ECF No. 11).

The court has dismissed defendant's fifth and sixth fraud-based counterclaims without prejudice. (ECF No. 32). Defendant's motion for summary judgment asks the court to enter judgment in its favor on its remaining counterclaims and dismiss—with prejudice—all of plaintiff's claims. (ECF No. 39 at 8). Plaintiff's summary judgment motion asks the court to grant judgment in its favor on all its claims. (ECF No. 40, at 5).

**II.     Undisputed Facts**

Plaintiff and defendant are both artificial turf installation companies. (ECF No. 40; ECF No. 32). Plaintiff was incorporated in California in 2017 and registered its fictitious firm name, "US Turf," in 2018. (ECF No. 45 at 6). Defendant is a Nevada limited liability company called "US Turf, LLC," formed in May 2020. (ECF No. 39 at 1). Both plaintiff and defendant use the words "US Turf" to identify themselves in advertisements, social media accounts, and websites. (ECF No. 39, at 9; ECF No. 40, at 5). However, plaintiff is primarily based in San Diego, California whereas defendant is based in Las Vegas, Nevada. (ECF No. 39, at 9).[1]

In October 2020, plaintiff sent a letter to defendant, requesting that defendant cease use of plaintiff's trademark. (ECF No. 39, at 5; ECF No. 45, at 7). When the letter was sent, plaintiff had a USPTO registered design mark that included the words "US Turf." (ECF No. 40-4). But the design mark expressly disclaimed the exclusive right to use the words "US Turf" outside of the design. (ECF No. 40-4).

Plaintiff subsequently registered the word mark "US Turf" in 2021. (ECF No. 1 at 3). Although registration of the mark was originally denied due to it being primarily geographically

---

[1] The parties dispute when—and if—plaintiff expanded into the Las Vegas market, but it cannot be disputed that plaintiff's primary place of business is San Diego. (ECF No. 1, ¶ 5).

**James C. Mahan**
**U.S. District Judge**

- 2 -

descriptive, the examining attorney approved the mark after plaintiff represented that "US" was an abbreviation for "Upmann Sanchez." (ECF No. 39, at 16). Soon after, plaintiff filed this suit claiming that defendant infringed upon both its trademarks by using the term "US Turf." (ECF No. 1 at 5, ¶ 21).

**III.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits (if any), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Information may be considered at the summary judgment stage if it would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In evaluating evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The court's function at this stage is not to "determine the truth of the matter but to determine whether there is a genuine issue for trial." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

When the non-moving party bears the burden of proof at trial, the moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

## IV. Plaintiff's Motion to Exclude Expert Survey and Testimony

In support of its summary judgment motion, defendant offers as evidence the results of a consumer survey conducted by its retained expert, Brian Sowers. (ECF No. 39-10). Plaintiff moves to exclude this evidence on the basis that Sowers' survey methodology is flawed, and that he included legal conclusions in his report. (ECF No. 41-1).

The Ninth Circuit has long held that "survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant." *E.g.*, *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). "Challenges to survey methodology go to the weight given the survey, not its admissibility." *Id.* (citation omitted). Issues with methodology include "technical inadequacies in a survey, including the format of the questions or the manner in which it was taken." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (cleaned up) (citations omitted).

Plaintiff admits that Sowers' survey was conducted based on accepted scientific principles but takes issue with the way certain questions were worded, how the data was analyzed, and from where the survey participants were drawn. (ECF No. 41-1, at 6). This is a paradigmatic example

James C. Mahan
U.S. District Judge

- 4 -

of survey evidence that should not be excluded. Plaintiff argues that if the court admits Sowers' survey results, they "should be given little weight, if any." (*Id.* at 7). However, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.

Plaintiff also objects to Sowers' interpretations of the survey results as inadmissible legal testimony. (ECF No. 41-1, at 5–6). Sowers references his survey results in the context of what "courts" have found to be probative. (ECF No. 39-10 at 11). Sowers states that it is his "professional opinion that [plaintiff's] word mark has not acquired secondary meaning." (*Id.* at 10). While it is true that experts may not give their opinions as to legal conclusions, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), this is not grounds to exclude Sowers' report in its entirety.

Concerns about Sowers' methodology are insufficient grounds to find his testimony inadmissible. But the court excludes from the record Sowers' above inadmissible legal conclusions. Plaintiff's motion to exclude is therefore granted in part and denied in part, consistent with the foregoing.

**V.    Motions for Summary Judgment**

The court addresses, in turn, each of plaintiff's two registered trademarks.

A.    <u>Plaintiff's word mark</u>

To establish trademark infringement and unfair competition claims under the Lanham Act, the plaintiff must establish that it has a valid, protectable trademark. *E.g.*, *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985); *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002). "To be valid and protectable, a mark must be distinctive." *Zobmondo Ent., LLC v. Falls Media*, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010) (citations omitted). Plaintiff's second trademark is the standard character word mark for the term "US Turf." The rights associated with a mark in standard characters reside in the wording and not in any particular display. *In re Viterra Inc.*, 671 F.3d 1358, 1363 (Fed. Cir. 2012).

Terms in word marks fall into four categories of distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Japan Telecom, Inc.*, 287 F.3d at 872. Arbitrary or fanciful terms are the most distinctive and receive the most protection while generic

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  terms receive no protection. *Id.* Generic terms do not receive protection because "we do not grant
2  exclusive property rights" to common words that are necessary for describing goods and services.
3  *Id.* Whether a mark is sufficiently distinctive or merely descriptive depends on "the primary
4  significance of the mark to the purchasing public." *Zobmondo Ent.,* LLC, 602 F.3d at 1113.

5  When a mark is shown to be primarily geographically descriptive, it can be saved only by
6  showing that it has obtained a "secondary meaning" to the purchasing public. *Japan Telecom,*
7  *Inc.*, 287 F.3d at 872–73. Defendant argues that plaintiff's word mark registration of "US Turf"
8  is subject to cancellation because it is an unprotectable geographic description, and plaintiff has
9  provided insufficient evidence of secondary meaning on summary judgment. (ECF 39, 9–11).
10 Plaintiff counters that "US Turf" is not primarily geographically descriptive because it was
11 successfully registered with the USPTO and there is a genuine dispute of fact as to whether "US
12 Turf" has obtained secondary meaning. (ECF No. 45, at 13–14). The court finds that defendant
13 has met its burden on summary judgment, while plaintiff has not.

14 "Where the PTO issues a registration without requiring proof of secondary meaning, the
15 presumption is that the mark is inherently distinctive." *Zobmondo Ent., LLC*, 602 F.3d at 1113.
16 This presumption is rebuttable, however, by the defendant showing that the term is primarily
17 geographically descriptive "by a preponderance of the evidence." *Id.*; *Yellow Cab Co. of*
18 *Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). Once the
19 defendant has met its burden, the plaintiff must establish that the mark has acquired secondary
20 meaning to obtain trademark protection. *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564
21 (2d Cir. 1990).

22 Because plaintiff obtained registration of "US Turf" without providing proof of secondary
23 meaning, it is entitled to the presumption that "US Turf" is distinctive, but not that it has acquired
24 secondary meaning. *Id.*[2] On summary judgment, defendant may rebut this presumption by
25 showing that there is no genuine dispute of fact as to whether "US Turf" is distinctive. If defendant

---

[2] "The existence of secondary meaning is a question of fact with the burden of proof on the party claiming exclusive rights in the designation. This burden does not shift upon a decision of the Patent and Trademark Office to register the mark, absent evidence that the Office registered the mark upon finding that it had acquired secondary meaning." *PaperCutter, Inc.*, 900 F.2d at 564 (citations omitted).

James C. Mahan
U.S. District Judge

- 6 -

so establishes, the burden then shifts back to plaintiff to show a genuine dispute as to whether "US Turf" has acquired secondary meaning.

*1.     Primarily geographically descriptive*

A term is primarily geographically descriptive if "consumers would reasonably believe" that the term is geographically descriptive of the goods or services. *Japan Telecom, Inc.*, 287 F.3d at 871. This is a question of fact that is established by showing that "the term conveys to customers primarily or immediately a geographical connotation" and the service does "in fact come from the place so named." *In Re Charles S. Loeb Pipes, Inc.*, 1975 WL 20760, at *6 (T.T.A.B. Dec. 23, 1975); *Japan Telecom, Inc.*, 287 F.3d at 873.[3] A term is *primarily* geographically descriptive if the geographical meaning of the word is not "minor or obscure or remote." *In Re Charles S. Loeb Pipes, Inc.*, 1975 WL 20760, at *5

Despite plaintiff's claim that the "US" in "US Turf" represents "Upmann Sanchez" and not "United States," the mark is still primarily geographically descriptive if a recognizable portion of the consuming market perceives it as such. The court takes judicial notice that "US" is a common abbreviation for "United States," a well-known geographic location neither obscure nor remote. *U.S. Blind Stitch Mach. Corp. v. Union Special Mach. Co.*, 287 F. Supp. 468, 470 (S.D.N.Y. 1968).[4] It is similarly undisputed that plaintiff's services are performed within the United States and nowhere else.

Nevertheless, defendant is required to bring forth evidence to rebut the presumption that plaintiff's word mark is distinctive and protectable. Defendant's expert Sowers reports that none of the consumers surveyed understood "US Turf" to stand for "Upmann Sanchez" Turf. (ECF No. 39-10, at 11). Of the relevant consumer group surveyed, 68.3% of the total group—and 76.8% of the California subgroup—believed that "US Turf" stood for "United States" Turf. (ECF No. 39-

---

[3] *See also* 2 McCarthy on Trademarks and Unfair Competition § 14:29 (5th ed.). "[W]here (1) there is no real question that the geographical significance of a term is its primary significance; and (2) where the geographical place is neither obscure or remote; and (3) the applicant's own [services] come from the geographical place named in the term, then a public association of the [services] with the place will ordinarily be presumed."

[4] "It is a matter of common experience that the initials 'US' usually stand for an abbreviation of the United States."

10, at 25, 27). This is overwhelming evidence that the term "US Turf" conveys to customers a primarily geographical connotation.

Plaintiff does not provide conflicting evidence. The court finds that defendant has successfully rebutted the presumption that "US Turf" is a distinctive term. The burden now shifts to plaintiff to demonstrate that there is a genuine dispute of fact that "US Turf" has obtained secondary meaning.

### 1. *Secondary meaning*

"A geographically descriptive term acquires secondary meaning when consumers come to associate that term with one particular source" as opposed to merely denoting the location of the services offered. *Forschner Grp., Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348, 353 n.3 (2d Cir. 1994); *Japan Telecom, Inc.*, 287 F.3d at 873. This is a question of fact that may be established via evidence of actual confusion, "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Id., Filipino Yellow Pages v. Asian Journal*, 198 F.3d 1143, 1151 (9th Cir. 1999). But expert surveys of the consuming public are generally the *most* persuasive evidence of secondary meaning. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

In *Zippo Manufacturing Co. v. Rogers Imports, Inc.*, the court found insufficient proof of secondary meaning where survey evidence showed that 25% of all respondents associated the plaintiff's design with a single source. 216 F.Supp. 670, 689–690, 137 U.S.P.Q. 413 (S.D.N.Y. 1963). In *McNeil-PPC, Inc. v. Granutec, Inc.*, the court found sufficient proof of secondary meaning where survey evidence showed that 41% of all respondents associated the plaintiff's design with a single source. 919 F. Supp. 198, 202, 37 U.S.P.Q.2d 1713 (E.D.N.C. 1995). "Generally, figures over 50% are regarded as clearly sufficient. However, figures of 46%, 48%, and 37% have also been found sufficient." 6 McCarthy on Trademarks and Unfair Competition § 32:190 (5th ed.) (surveying cases).

Defendant meets its burden on summary judgment by providing survey evidence that "US Turf" has not acquired secondary meaning. Only a net 21.3% of total consumers surveyed by its

expert, Sowers, associated "US Turf" with a single source (the "association rate"). (ECF No. 39-10, at 10). Of the California consumer subgroup, only 25.5% associated "US Turf" with a single source. (*Id.*). These results were obtained after accounting for an error rate via a control test,[5] and are clearly below the threshold for finding secondary meaning.

Plaintiff does not provide the court with competing survey results, only a rebuttal expert for Sowers' methodology. (ECF No. 45, at 15). Based on the testimony of its rebuttal expert, plaintiff asks the court to disregard half of Sowers' data and use the much higher association rate from his raw test results (39.8%), without accounting for *any* error rate. (ECF No. 45, at 15). But the court's job on summary judgment is not to make credibility findings between experts, and plaintiff's expert testimony is not itself evidence of secondary meaning without a competing survey. *Cf. Wendt*, 125 F.3d at 814 (explaining that challenges to survey methodology only go to the *weight* of the challenged survey).

Plaintiff next attempts to establish a genuine dispute as to secondary meaning with evidence of actual confusion. (ECF No. 45 at 15). The Ninth Circuit has held that while seventy-six instances of actual confusion may be evidence of secondary meaning, two is clearly insufficient. *Japan Telecom*, 287 F.3d at 874. Additionally, where the mark sought to be protected is especially weak (i.e., highly descriptive), a strong showing of secondary meaning is required. *Id.* at 873.

Plaintiff provides the court with only five instances of actual confusion. (ECF No. 45, at 4). This is clearly insufficient evidence. Plaintiff also provides survey results that 24.1% of respondents who were shown plaintiff's website alongside three other websites, including defendant's, believed that defendant is affiliated with plaintiff. (ECF No. 40-18, at 16). But this evidence actually supports a finding that there is *no* likelihood of confusion as an overwhelming

---

[5] Defendant's expert conducted a real test and a control test to account for an error rate. (ECF No. 39-10, at 15–16). The term "Artificial Turf" was used in the control test because "it cannot reasonably be attributed to any one particular company." (*Id.*). Any consumers in the control test who responded that they associated "Artificial Turf" with one company were therefore likely guessing. (*Id.*). Because the rate of guessing in the control test would be the same as the real test, the difference between the rates of the two tests is a more accurate measure of consumer association to "US Turf." (*Id.*).

majority of respondents (75.9%) were *not* confused.  *See* 6 McCarthy on Trademarks and Unfair Competition § 32:190 (5th ed.).[6]

Accounting for all the evidence, and drawing all reasonable inferences in plaintiff's favor, the court finds that plaintiff has failed to establish a genuine dispute of fact for trial as to whether "US Turf" has obtained secondary meaning.  "US Turf" is a weak mark, requiring a strong showing of secondary meaning.  Defendant provides the most persuasive evidence that "US Turf" has not obtained secondary meaning while plaintiff provides insufficient evidence to meet its burden.

As there is no genuine dispute of fact regarding whether plaintiff's word mark for the term "US Turf" is protectable, the court grants summary judgment in favor of defendant on plaintiff's first and second claims—as to this mark.  The court also grants summary judgment in favor of defendant on its third and fourth counterclaims.  The court dismisses, without prejudice, defendant's first and second counterclaims.[7]

B.   Plaintiff's design mark

Plaintiff alleges in its complaint that defendant's use of the term "US Turf" infringes upon *both* its trademarks.[8]  (ECF No. 1, at ¶¶ 21, 22, 36).  Plaintiff's first trademark is a design mark, which is reproduced here:

**USTurf** 🌱

Plaintiff's registration of the above design mark specifically disclaims the exclusive right to the words "US Turf."  (ECF No. 40-4, at 2).  "US Turf" is not a protectable word mark.  Defendant cannot infringe upon plaintiff's design mark simply by using the term "US Turf."

---

[6] "[I]f 20% of the relevant customer group regards the designation as designating one source and each of the 20% is confused, protection of the designation as a mark would be contrary to the primary significance rule: 80% of the relevant population does not regard the designation as a trademark."  Here, plaintiff's survey is even less persuasive because it was conducted to test likelihood of confusion, without considering secondary meaning and brand recognition.

[7] Defendant's first and second counterclaims request the same relief as its third and fourth counterclaims, but under different theories.

[8] To be clear, plaintiff makes no allegations in its complaint that defendant's *logo* infringes upon its design or word marks.  (*See generally* ECF No. 1).  Plaintiff alleges only that defendant caused confusion in the marketplace and infringed upon both its trademarks by using the *term* "US Turf." (*Id.*, at ¶¶ 21, 22, 36).

**James C. Mahan**
**U.S. District Judge**

Summary judgment in favor of defendant on plaintiff's first and second claims is therefore appropriate with respect to the design mark.

### C. Plaintiff's Lanham Act injunctive relief claim

Plaintiff's final claim is for injunctive relief under the Lanham Act. Injunctive relief is not an independent, free-standing cause of action. It is a form of relief the court may grant. Under the Lanham Act, a court may grant an injunction to prevent trademark infringement, dilution, false association, false advertising, and cybersquatting. 15 U.S.C.A. § 1116 (West). Defendant has not infringed upon plaintiff's trademarks and plaintiff does not allege any other violation under the Lanham Act. Injunctive relief is not appropriate. The court dismisses plaintiff's third and final cause of action.

## VI. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion to exclude (ECF No. 41) is GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (ECF No. 30) is GRANTED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (ECF No. 40) is DENIED.

The clerk is instructed to enter judgment and close the case.

DATED September 29, 2023.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 11 -